IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN VALENTIN,<br>*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| PHILADELPHIA COUNTY SHERRIF'S<br>OFFICE, ET AL.,<br>*Defendants* | : | No. 19-cv-1175 |

## MEMORANDUM

PRATTER, J.                                                                                                            MARCH 16, 2022

Jonathan Valentin alleges that officers from the Philadelphia Sheriff's Department attacked him at the Philadelphia Family Court and unlawfully arrested him. He raises an assortment of constitutional and state law claims based on this incident. The defendants move for summary judgment, arguing that Mr. Valentin has introduced no evidence to support his claims. For the reasons that follow, the Court grants the defendants' motion.

### BACKGROUND

This case stems from an altercation between Mr. Valentin and officers of the Philadelphia Sheriff's Department at the Philadelphia Family Court on March 19, 2017. Doc. No. 20, Am. Compl. ¶ 1–3. Mr. Valentin was late in arriving to see his child during court-supervised visitation hours, and a courthouse nursery employee denied him entry based on his late arrival. *Id.* ¶ 3. He alleges that two family courthouse employees and two Deputy Sheriff's Officers, Derrick Murphy and Amada Rodriguez, were present. *Id.* ¶¶ 4, 6. According to Mr. Valentin, Officer Murphy then "became violent and unprofessional" and "began to make fun of" him in front of his son and his son's mother. *Id.* ¶ 12. Mr. Valentin alleges that he asked for Officer Murphy's badge number, at which point Officer Murphy attacked him. *Id.* ¶¶ 4, 13. Mr. Valentin was placed in custody for

1

assaulting a police officer, sent to the hospital for a neck injury, and released the following day. *Id.* ¶¶ 5, 15. The Philadelphia Sheriff's Office did not press criminal charges.

Mr. Valentin filed a series of *pro se* complaints against the Philadelphia Sheriff's Office, as well as Officer Murphy and Officer Amada Rodriguez.[1] Mr. Valentin asserts (1) criminal claims for reckless endangerment, simple and aggravated assault, false imprisonment, and document fraud, as well as constitutional and Section 1983 claims for (2) wrongful arrest, excessive use of force, and retaliatory/malicious prosecution in violation of the Fourth Amendment, (3) deprivation of liberty in violation of the Fifth Amendment, and (4) violation of his First Amendment rights of freedom of speech, right to peaceably assemble, and to petition the government for a redress of grievances. *Id.* ¶ 27. He seeks $180,000 in damages. *Id.* ¶ 38.

In moving for summary judgment, Officer Murphy offers an affidavit stating that Mr. Valentin attacked him, rather than the other way around. Officer Murphy states that Mr. Valentin reacted to being unable to attend his court-supervised session with his son by yelling at court staff. Doc. No. 31-3 ¶ 7. Mr. Valentin then began cursing and Officer Murphy asked him to leave. *Id.* ¶¶ 14–15. Mr. Valentin then called Officer Murphy a "f–ing n–er" several times, and Officer Murphy walked toward him, telling Mr. Valentin that he needed to leave. *Id.* ¶¶ 18–19.[2] Mr. Valentin continued to curse at Officer Murphy and pushed his cell phone into his chest. *Id.* ¶ 20. Officer Murphy told Mr. Valentin not to touch him and then Mr. Valentin began to leave the courthouse, continuing to shout and call him a "f–ing n–er." *Id.* ¶¶ 21–22. As Officer Murphy

---

[1] The Court treats Mr. Valentin's third complaint (Doc. No. 20) as the operative pleading. Pursuant to the Court's December 9, 2021 order, Mr. Valentin's subsequent entries (Doc. Nos. 41, 54, 56) are construed as a response to defendants' motion for summary judgment. *See* Doc. No. 55.

[2] The security video footage does not provide audio, but it shows Officer Murphy pointing toward the exit at 2:58 p.m. while Mr. Valentin collects his belongings and gesticulates toward Officer Murphy. Video, Wide Angle Lobby Desk, at 2:58:23 PM.

2

followed Mr. Valentin to the door, Mr. Valentin jabbed Officer Murphy's chin with his cell phone. *Id.* ¶¶ 22–23. In response, Officer Murphy "grabbed him" and "took him into custody." *Id.* ¶ 24.

The defendants also provided security video footage of the courthouse exit at the time of the incident.[3] The video footage does not contain audio but shows two discrete instances of physical contact.

In the first instance, Mr. Valentin points his cell phone at Officer Murphy as the two appear to argue and then Mr. Valentin pushes his phone into Officer Murphy's chest. Video, Lobby Desk at 2:57:35–2:57:48 PM. Officer Murphy argues more forcefully, and moves to block Mr. Valentin's path, causing the two men to bump into one another, but Officer Murphy does not reach out to touch Mr. Valentin. *Id.* at 2:57:30–2:58:00 PM. Officer Rodriguez then moves in and grasps Mr. Valentin's arm to guide him toward the exit. *Id.* at 2:57:56. Mr. Valentin eventually heads toward the exit, and Officer Murphy follows. Video, Wide Angle Lobby Desk at 2:59:03–06 PM.

The second physical confrontation occurs in the doorway. Video, Arch St. at 2:59:10– 2:59:30 PM; Video, Wide Angle Lobby Desk at 2:59:10–2:59:18 PM. Officer Murphy is standing in close proximity to Mr. Valentin and then pushes Mr. Valentin against a window corner outside the doorway. Video, Arch St. at 2:59:10–18 PM. The men scuffle in the corner for fewer than 10 seconds. *Id.* Mr. Valentin then gets past Officer Murphy and they both walk around on the sidewalk gesturing toward each other. Video, Arch St. at 2:59:18–25 PM. Officer Murphy then puts his hand on Mr. Valentin's arm and pulls him back toward the door to the Family Court building. *Id.* at 2:59:26–29 PM. Eventually they walk back inside to the courthouse front desk, with Officer Murphy following Mr. Valentin. Video, Wide Angle Lobby Desk at 2:59:30–3:02:12 PM. Mr. Valentin remains standing upright throughout both physical encounters and never loses

---

[3] Mr. Valentin acknowledged receipt of this evidence and actually references it in his opposition to summary judgment. Doc. No. 56, at 4, 8, 13, 14.

hold of two bags he is carrying. Several minutes later, Officer Murphy handcuffs Mr. Valentin with other officers present. *Id.* at 3:02:16–21 PM. The officers then led Mr. Valentin through a different door within the Family Court building. *Id.* at 3:02:21–3:03:06 PM.

Mr. Valentin did not seek any discovery in this litigation beyond the videotape. The defendants move for summary judgment on all claims.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party seeking summary judgment bears the initial burden of identifying those portions of the record believed to demonstrate the absence of material factual disputes. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party responding to a motion for summary judgment "cannot simply reassert factually unsupported allegations contained in [his] pleadings." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). He "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257.

*Pro se* pleadings, such as those of Mr. Valentin, must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

DISCUSSION

Mr. Valentin asserts Section 1983 claims under various constitutional provisions, as well as violations of several Pennsylvania laws. The Court will address each set of claims in turn.

I. **Section 1983 Claims**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Mr. Valentin alleges that Officer Murphy, Officer Rodriguez, and the Philadelphia County Sheriff's Office are liable under Section 1983 for violations of his First, Fourth, and Fifth Amendment rights.[4] At the summary judgment stage, the Court will analyze each alleged constitutional violation in light of the evidence presented.

A. <u>**Officer Murphy's Liability**</u>

Although he opposes summary judgment, Mr. Valentin does not introduce any evidence to call into question or rebut Officer Murphy's affidavit. A "nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect." *Williams*, 891 F.2d at 460. Mr. Valentin does not dispute the facts in Officer Murphy's affidavit, such as the assertion that Mr. Valentin repeatedly used a racial epithet or that Mr. Valentin jabbed Officer Murphy's chest and chin with his cell phone. Rather, Mr. Valentin points to police investigation reports that contain the same material facts as Officer Murphy's affidavit.

---

[4] Mr. Valentin also asserts a claim for document fraud under a federal immigration statute (8 U.S.C. § 1324c). Doc. No. 20, Am. Compl. ¶ 36. He captions this paragraph as "[f]iling a false police report can lead to multiple criminal consequences." *Id.* Mr. Valentin does not have standing to enforce a federal immigration fraud statute or to seek criminal charges.

### *1. First Amendment*

Mr. Valentin appears to allege that his arrest was in retaliation for his exercising "the right to criticize the police." Doc. No. 20, Am. Compl. ¶ 37. To establish a First Amendment retaliation claim, Mr. Valentin must show: "(1) that [he] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003).

Mr. Valentin has introduced no evidence that he engaged in activity protected by the First Amendment. To the extent he refers to the evidence introduced by Officer Murphy that Mr. Valentin repeatedly called Officer Murphy a racial epithet, it is clear that calling a police officer a racial slur is not protected First Amendment speech. *Boyle v. Evanchick*, No. 19-cv-3270, 2020 WL 1330712, at *6 (E.D. Pa. Mar. 19, 2020) (collecting cases) ("Many courts have recognized that the use of the word 'n****r,' directed insultingly at an individual, falls within this category of 'fighting words'" not subject to First Amendment protections.). Indeed, this portion of Mr. Valentin's claim supports, rather than disputes, Officer Murphy's affidavit and motion for summary judgment.

Mr. Valentin also suggests that his court-supervised visitation with his child was protected under the First Amendment, alluding to the right to peaceably assemble. However, Mr. Valentin does not explain how court-supervised visitation invokes this right or how this lawsuit as presently configured would vindicate such a right. Denying Mr. Valentin's desire to visit his son was a straightforward application of the courthouse's procedures. And Mr. Valentin makes no argument that the courthouse's procedures are unreasonable restrictions on assembling in a courthouse. Moreover, Family Court employees who enforced the Family Court's rules are not defendants in this case. Doc. No. 20, Am. Compl. ¶¶ 3, 9. In other words, even if he argued that the visitation timing requirements were unreasonable, he has not claimed that "the alleged deprivation was

6

committed by [any] person acting under color of state law" so as to properly state a claim under 42 U.S.C. § 1983. *West*, 487 U.S. at 48.

Lastly, Mr. Valentin asserts a violation of his right to petition the government. Mr. Valentin mentions that he has made several attempts at resolving this case, but that the Sheriff's Office has not been amenable to his efforts. Doc. No. 20, Am. Compl. ¶¶ 19–21. The right to petition, however, is the right to *express* requests; there is no First Amendment right to *obtain* the request. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 395–98 (2011) (describing history of the right to petition). Even construing his complaint liberally, Mr. Valentin has introduced no evidence to support a violation of his right to petition the government.

In sum, Mr. Valentin does not point out any dispute of material fact on his First Amendment claim. Therefore, the Court grants summary judgment on this issue.

### 2. Fourth Amendment

Mr. Valentin also asserts claims for wrongful arrest, malicious prosecution, and excessive force in violation of the Fourth Amendment

#### i. Probable Cause (Wrongful Arrest and Malicious Prosecution Claims)

Fourth Amendment claims for wrongful arrest and malicious prosecution require establishing that the officer lacked probable cause to arrest the plaintiff. *See Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) ("To prevail on a Fourth Amendment malicious prosecution claim under section 1983, a plaintiff must establish that . . . the defendant initiated the proceeding without probable cause." (citation omitted)); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."). A probable cause determination is appropriate for summary judgment where there are no genuine issues of material

7

fact and no credibility issues. *Dreary v. Three Un-named Police Officers*, 746 F.2d 185, 192 (3d Cir. 1984).

Officer Murphy arrested Mr. Valentin for assaulting a law enforcement officer. Doc. No. 31-2, at 1. Officer Murphy introduced evidence that he had probable cause to arrest Mr. Valentin because Mr. Valentin assaulted him with his cell phone. *Id.*; Doc. No. 31-5 ¶¶ 25–36. In response to Officer Murphy's affidavit, Mr. Valentin does not dispute either instance of cell phone contact.[5] And it is clear from the video evidence that Mr. Valentin did in fact poke Officer Murphy in the chest with his cell phone during the first instance of physical contact between the two men. Video, Lobby Desk at 2:57:39 PM

Mr. Valentin provides no evidence from which the Court could infer that Officer Murphy lacked probable cause to arrest him. Therefore, the Court will grant summary judgment for Officer Murphy on the wrongful arrest and malicious prosecution claims.

### ii. Excessive Force

Mr. Valentin also alleges that Officer Murphy used excessive force in the arrest. "A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Fourth and Fourteenth Amendments to the United States Constitution." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633–34 (3d Cir. 1995). The Supreme Court "has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or the threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks

---

[5] With respect to Mr. Valentin's claim for malicious/retaliatory prosecution and filing false charges, the Court also notes that it is undisputed that Mr. Valentin has provided no evidence that charges were pursued against him in relation for the March 19, 2017 altercation. In his complaint Mr. Valentin agrees that the charges were "dropped." Doc. No. 20, Am. Compl. ¶ 16.

8

omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Mr. Valentin "must show more than de minimis force to establish his claim." *Page v. Doyle*, No. 18-cv-609, 2019 WL 1790467, at *3 (E.D. Pa. Apr. 24, 2019).

While reasonableness is typically a question for the jury, in a case such as this one "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). "The factors that a court should consider in judging the reasonableness of the use of force are: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officer or others; 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; 4) the duration of the officers' action; 5) whether the action takes place in the context of effecting an arrest; 6) the possibility that the suspect may be armed; 7) the number of persons with whom the police officers must contend at one time; and 8) whether the force applied was of such an extent as to lead to injury." *McCracken v. Freed*, 243 F. App'x 702, 709 (3d Cir. 2007).

Mr. Valentin has introduced no evidence to support his excessive force claim. His medical records[6] do not address the key issue of whether the force applied was reasonable because the standard is what force would be objectively reasonable from the officer's perspective *at the time of the physical contact*, regardless of the ultimate effect on the suspect. *Graham*, 490 U.S. at 397.

---

[6] Mr. Valentin includes his emergency room intake form, which reflects that he reported neck and right shoulder pain on March 19, 2017. Doc. No. 33, at 35–39. In his opposition to summary judgment, he references "treatment of a neck injury sustained during the . . . initial arrest" and includes a physical therapy order related to "cervical myelopathy with cervical radiculopathy." Doc. No. 54, at 6, 13.

9

Instead, the only evidence of the force actually used by Officer Murphy during the two incidents leading up to the arrest is the video footage. The video shows the only physical contact during the first encounter is when Officer Murphy moves to block Mr. Valentin's path and Officer Rodriguez places her hand on Mr. Valentin's arm. Video, Lobby Desk at 2:57:30–2:58:00 PM. During the second incident, Officer Murphy pushed Mr. Valentin into a corner from a few inches away. Video, Arch St. at 2:59:10–2:59:18 PM; Video, Wide Angle Lobby Desk at 2:59:10–2:59:18 PM. The video evidence shows that Mr. Valentin remained upright throughout the encounter and was not thrown "on to the floor" as he alleges. Video, Arch St. at 2:59:05–2:59:31 PM; Video, Wide Angle Lobby Desk at 2:57:26 PM–3:03:06 PM. Indeed, Mr. Valentin did not even lose control of the two bags he was carrying throughout his time at the courthouse. After the second instance of cell phone contact, Officer Murphy and Mr. Valentin returned inside from the doorway, and Officer Murphy stood next to him while they waited for several other officers to walk up. Video, Wide Angle Lobby Desk at 2:59:30–3:02:59PM. Only after other officers arrived, and Mr. Valentin led the way to the exit carrying his own bag, did Officer Murphy slowly handcuff Mr. Valentin. *Id.* at 3:02:01–3:03:06–3:03:06 PM. At no point did Officer Murphy draw a weapon.

In stark contrast to what can be seen in the video footage, Mr. Valentin alleged that he "was grabbed by his neck while wearing a winter coat and a winter hoodie, placed in a choke hold and thrown into a wall and then onto the floor all while carrying a book bag in one hand." Doc. No. 20, Am. Compl. ¶ 24. The Court is not required to accept that version of the facts or construe the inferences in Mr. Valentin's favor in light of the unambiguously contrary video footage. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Viewing the video evidence here, it is plain that Mr. Valentin's version of the facts is "blatantly contradicted by the record."

Applying the reasonableness factors to the evidence presented, the Court finds that no reasonable jury could conclude that Officer Murphy used excessive force. Mr. Valentin repeatedly called Officer Murphy a "f—ing n—r" in the courthouse and pushed his cell phone into Officer Murphy's chest. In response, Officer Murphy then told Mr. Valentin to leave. Mr. Valentin does not dispute that he then struck Officer Murphy in the chin with his cell phone in the doorway. Officer Murphy pushed Mr. Valentin a few inches into the wall and the ensuing scuffle was short, lasting less than 10 seconds. And despite his unsupported allegation to the contrary, Mr. Valentin clearly remained upright throughout the encounter. This is plainly not a case that implicates the sometimes "hazy border between excessive force and acceptable force." *Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (internal quotation marks omitted).

Pushing a person out of a doorway in the manner Officer Murphy did here does not constitute excessive force. *See, e.g.*, *Foster v. David*, No. 04-cv-4829, 2006 WL 2371976, at *6 (E.D. Pa. Aug. 11, 2006). In similar (and even more severe) situations where an officer pushed an arrestee up against a wall, courts have consistently found that the officer used only *de minimis* force in view of the circumstances. *See, e.g.*, *Oberwetter v. Hilliard*, 639 F.3d 545, 548, 555 (D.C. Cir. 2011) (rejecting excessive force claim involving an officer allegedly "ripping apart [the plaintiff's] earbud, shoving her against a pillar, and violently twisting her arm"); *Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) (finding use of force was "de minimis, necessary, appropriate, and benign" where officer grabbed plaintiff's arm to move her out of the doorway and

struck her once with a "nightstick" in the ensuing struggle). The same is true in the circumstances here.

Therefore, the Court grants summary judgment for Officer Murphy on the excessive force claim.

### 3. *Fifth and Fourteenth Amendments*

Lastly, Mr. Valentin alleges that Officer Murphy violated his Fifth Amendment rights by depriving him of his liberty. Doc. No. 20, Am. Compl. ¶ 31. "[T]he limitations of the Fifth Amendment restrict only federal governmental action." *Nguyen v. U. S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983). Officer Murphy is not a federal actor, so Mr. Valentin cannot make a claim against him for deprivation of liberty under the Fifth Amendment. Nevertheless, construing the *pro se* complaint liberally, the Court will analyze Mr. Valentin's deprivation-of-liberty and false imprisonment claims under the Fourteenth Amendment. *See Groman*, 47 F.3d at 636 ("A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law.").

"The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished '*without due process of law.*'" *Baker v. McCollan*, 443 U.S. 137, 145 (1979) (emphasis added). An arrest based on probable cause cannot form the basis of a claim for false imprisonment or unlawful deprivation of liberty under the Fourteenth Amendment. *Groman*, 47 F.3d at 636. For the reasons discussed above, there is no factual dispute regarding whether Officer Murphy had probable cause to arrest Mr. Valentin. Because it is undisputed that Officer Murphy had probable cause to arrest Mr. Valentin, the Court also grants summary judgment on Mr. Valentin's deprivation-of-liberty claims.

12

### B. <u>Officer Rodriguez's Liability</u>

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Officer Rodriguez submitted an affidavit testifying that she followed Officer Murphy, saw the confrontation, and called for backup. Doc. No. 31-4 ¶¶ 9–11. Officer Rodriguez's only personal involvement was in escorting Mr. Valentin out of the building. Doc. No. 31-2, at 2; Video, Lobby Desk at 2:57:56.

Mr. Valentin's only allegation involving Officer Rodriguez is that Officer Rodriguez was "present during the incident." Doc. No. 20, Am. Compl. ¶ 6. But her presence alone does not constitute any "personal involvement" in Mr. Valentin's allegations.[7] Therefore, the Court grants summary judgment for Officer Rodriguez on all claims.

### C. <u>Philadelphia County Sheriff's Office Liability</u>

Even if Mr. Valentin had established a constitutional violation, his claim against the Sheriff's Office would fail. To prevail under § 1983 against a municipal entity, a plaintiff must demonstrate that the organization itself, through the implementation of municipal policy or custom (or the lack thereof), caused the underlying constitutional violation. *Monell v. Dept. of Social Svcs. of City of N.Y.*, 436 U.S. 658 (1978). Mr. Valentin asserts no custom or policy to provide a basis for *Monell* liability. Therefore, the Court also grants summary judgment for the Philadelphia County Sheriff's Office on the Section 1983 claims.

### II. Pennsylvania State Law Claims

Additionally, Mr. Valentin asserts various claims based on violations of state criminal statutes: reckless endangerment (18 Pa. Cons. Stat. § 2705), simple assault (18 Pa. Cons. Stat. § 2701), aggravated assault (18 Pa. Cons. Stat. § 2702), and false imprisonment (18 Pa. Cons. Stat.

---

[7] Moreover, even if her grasping his arm to guide him to the exit could constitute force (which it did not), it certainly was not excessive, especially given the examples cited above that courts have found to be *de minimis*.

§ 2903). The defendants correctly argue that these state *criminal* statutes do not provide a private *civil* right of action.

Construing Mr. Valentin's complaint liberally, he could intend to assert related tort claims. Even so, Mr. Valentin has failed to produce any evidence to support any of these claims. A police officer who has probable cause to arrest a suspect and uses reasonable force in doing so cannot be held liable for false imprisonment or assault. *See Renk v. City of Pittsburgh*, 537 Pa. 68, 76 (Pa. 1994) ("In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery."); *id.* ("The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention. An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not.").

Therefore, the Court grants summary judgment for the defendants on Mr. Valentin's state law claims as well.

## CONCLUSION

For the foregoing reasons, the Court grants the motion for summary judgment in full. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

14